United States Court of Appeals for the 11th circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th circuit is now open according to law. God save the United States and this honorable court. Good morning. We have four appeals to hear this morning and uh, counsel are familiar with your cases. The we've read your briefs, the authority cited in your briefs and at least portions of the record. So in the limited time available to you this morning, you should feel free to go straight to the heart of your argument. If you're answering a question from the court when your time expires, feel free to finish your answer. But do respect our time this morning and pay attention to the clock as it nears the expiration. Our first case this morning is the United States versus Cannon and Holton. Mr. Sams, you'll be representing Mr. Holton. Yes, your honor. And Mr. Rosenbaum, you'll be representing Mr. Cannon, right? Yes, your honor. Okay. Mr. Sams, if you'll begin first, please. Good morning. Thank you, your honor. May it please the court. The defendant in this case was prevented from having a defense when the court denied the defendant the opportunity to have an entrapment instruction presented to the jury. The standard for obtaining the instruction extremely slight. That is, some evidence must be shown for more than a scintilla. And that's quoting U.S. versus Austin, this circuit, 1990. So the question then becomes, did I present more than a scintilla of evidence that in fact my clients may have been entrapped? This court has also said that in order to have an instruction presented to the jury relating to the defense, if there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility, then that instruction should be given. And that's this circuit, United States versus Lively, 1986. In this particular case, whenever you talk about entrapment defense, obviously it's a very fact-intensive inquiry as to whether or not entrapment should be given. Mr. Holton and Mr. Cannon met initially with DEA agents who, after a number of meetings with them, determined that Holton and Cannon were jokers, that they had no drugs, that they were not even entitled to be continued to be investigated, and they wanted nothing to do with them. And I think that's an extremely important fact when we find out later in the facts that really what we have here is the tail wagging the dog. Because after the DEA wanted nothing to do with them because they were jokers and they didn't know anything about what they were trying to do, the confidential informant then takes this case to the DEA on his own based on the fact that this is his only way making money, and this is what he does for a living. So he then goes to the ATF and says, I believe that Holton and Cannon want to do a robbery. That was his summation, that was his guess, his belief. He then starts contacting Cannon on the phone, and then each time he contacts Cannon, he says in his introduction to the recorded conversation, this is a setup for a robbery. When he's saying that, he never said one word to Cannon about the fact that he wanted to do a stash house robbery. He just wanted to set him up so that later on when he met with ATF, they would spring it on Cannon. This is important because a lot of the cases that the government cites had stash house robberies where in fact the people that were being targeted were already doing stash house robberies, were already doing home invasion robberies, and so when they presented the stash house robberies to them, they had a basis to do that. They weren't just willy-nilly just going to poor people with an opportunity to make a lot of money. They went to people who were already doing that kind of thing. Mr. Sam, this is Judge Marcus. If I can ask you a question. Did the government do anything more than provide an opportunity to agree to rob a stash house? Well, let me answer it this way. They offered them an agreement to rob a stash house, but they also gave them the logistics on how to do it. They offered them transportation on how to get there. They set up a scenario where they would have to bring guns because they told them there was one guy with a gun, meaning you need to get a gun in order to do this. So what I'm saying is there was no contemplation in the mind of either of these defendants how to do a stash house robbery, whether they wanted to do a stash house robbery. So yes, Judge, you can say that all they did was present, but they presented to someone who had no idea or desire to do it. So if you look at it, yes. So our case law says, does it not, though, that it's not enough for the government to have come up with the idea, to present that idea, that there has to be some evidence of inducement, manipulation, or coercion, that kind of thing. Isn't that right? That is correct. But the standard for that type of thing is slight. I think the case law says there has to be some mild coercion, I think is the language that is used. So we're not talking about a lot of evidence of that. We're talking once again about more than a scintilla of evidence that they did some type of slight coercion that would cause the defendants to do this. And what I'm saying is, if you look at the totality, such as you can make $800,000 if you do this, there's only one guy with a gun, in other words, and we'll give you transportation. When you put all of these things together, combine it with the fact that these two gentlemen don't do this kind of thing, they had no evidence that they did this kind of thing, then what we really have is law enforcement letting themselves being led by a confidential informant instead of the other way around. Can I turn your attention for a moment to the 924C conviction? As I understand it- If I may judge, the co-counsel is going to do the 924C argument. So if you could hold off to when- You just adopt whatever your co-counsel says. We split things up before. That's fine. So back to, is that 55 seconds meaning I got 55 seconds left? I'm not sure. Yes, yes. You've got some time for rebuttal too. Okay, let me just talk a little bit about the discovery motion that I filed. Basically, there was a national study done by USA Today that 91% of the people who are incarcerated for stash house things are minorities. That led me to do an examination of the Southern District of Florida where for 10 years there were 25 stash house robberies and 87 defendants were arrested and all of them were people of color. And my point being here is that- But is there any evidence of similarly situated defendants who though of a different race were not prosecuted? Right. I didn't have that, but in selective enforcement cases, which is what this is because I'm specifically asking for ATF policies and practices and whether or not the confidential informants that the ATF employed were in fact doing it in a discriminatory manner. So if you look at the selective enforcement cases, such as the ones that I gave the court in my supplemental authority, United States versus Southerners, United States versus Washington and the Seventh Circuit, those were three circuits. And so there's a lesser standard than the Armstrong standard when you're talking about selective enforcement as opposed to selective prosecution. And that's what I'm saying here. You should not require the Armstrong standard, but the lower standard for selective enforcement. Thank you. Thank you. Mr. Rosenbaum. Morning, your honors. May it please the court. My name is Richard Rosenbaum on behalf of Mr. Cannon. I am addressing the outrageous governmental conduct and also the 924C. So I guess the best way to start is in reverse order with Judge Pryor. Please, please do so. Oh, okay. Well, first of all, I'd like to argue the outrageous government conduct and both the should shock the conscience of any judge. And there was a pretrial motion that was addressed to this. It was a motion to dismiss based on outrageous governmental conduct at docket number 38. And the question becomes whether it was so grossly shocking and so outrageous as to violate the universal sense of justice. Now, in this case, you know that this was a fake stash house robbery sting. There was never any cocaine. There was never really any stash house. The guns involved were brought at the government's insistence, or at least in their wording that they should that they should bring ammunition. I think the comments made during trial was that the people in there were strapped, meaning that they were loaded for firearms. So the appellants, both Mr. Cannon... The problem for you on this argument is that there was a predisposition on the part of the defendants to engage in illegal drug transactions. And that when the government suggested this idea of a stash house robbery, there was really no hesitation. They went straight to the planning of it when they were warned by the agent, the undercover agent, that it would be dangerous. They scoffed at the idea of backing out. Am I wrong about that? You're correct in that, but the flip side of that is that that's what makes this outrageous conduct is that the government was so overly involved in this case and took part in every part of this offense. Although Mr. Cannon might have had a predisposition to engage in a drug deal, there was no evidence in this record that he was predisposed to engage in a stash house ripoff or ever to engage in an 18 kilo deal. In fact, the agent said that they always thought he was lying about having a large quantity of cocaine. So he was basically entrapped into committing a larger amount of possession with intent to distribute than he normally would have. And the outrageous conduct, the entrapment goes also into a sentencing entrapment argument that I raised in the briefs that the government basically manipulated the amount of alleged cocaine that was never there. They could have said it was a gazillion tons. They could have said it was one kilo. So the government was totally in control of that. It's our contention under the case law that's developed. And although it's mostly Supreme Court case law, and it is very fact intense, as Mr. Sam stated, we believe that outrageous governmental conduct occurred here. Mr. Rosenbaum, tell me about the guns. Who brought the guns and what were they? Did both defendants have a gun or not? There were two AK-47s. My understanding was an AK pistol and an AK rifle. All right. And tell me, did Mr. Holton and Mr. Cannon, they were their guns, they brought the guns there? At least one of the guns was brought there. All right. And which gun was brought there? One of the AKs, I believe it was the rifle. And the government didn't provide the rifle. The defendant had the AK-47, is that correct? Yes. And which defendant was that? Mr. Cannon had it. All right. And Mr. Holton had, we think, an AK pistol, you said? I believe so. I might have them backwards, but I do believe they both had AKs. Okay. And the government did not provide that weapon either, did it? No, it didn't. All right. And did Mr. Holton bring whatever the AK weapon was that day? I am assuming so. Mr. Cannon definitely brought a weapon. Now, I'm talking about Mr. Holton too. Mr. Holton, I believe, had a weapon on him. Okay. Thank you. You talked about it being fact-intensive and I wanted to know those facts. Yes. Yes. Mr. Rosenbaum, could you help me with the 924C issue? For me, that's the most intriguing question raised. And let me just focus you sort of with a laser beam on the thing that bothers me about it. It's difficult. I'd like you to comment on this. It's difficult for me to see how a jury would have concluded that the defendants were guilty of using a firearm during and in furtherance of an underlying Hobbs Act conspiracy predicate without at the same time also concluding that they used the firearm during and in furtherance of the drug conspiracy. Is there any way to tease those two out? Or do we have a case where they are so inextricably intertwined that we have to fairly conclude that the jury found that the requisite predicate was the conspiracy to commit the 841A1 drug crime? Yes, Your Honor. I do believe that that was what the jury inferred and that that was one of the problems with the 924C conviction and one of the reasons that it should be overturned. It seemed to me that Judge Marcus's question would lead us to the conclusion that it should be affirmed. That if they were inextricably intertwined, then we don't have a real possibility here that the jury could have found that the 924C offense was dependent on just the Hobbs Act robbery as opposed to the drug trafficking conspiracy. Right, but it's our contention that the Hobbs Act robbery didn't constitute a crime of violence and would have pertained as well to the drug trafficking conspiracy. Then it doesn't matter, does it? If both were true, then yes, what Your Honor said would be correct. Okay. And I reserve the rest of my time for rebuttal. Okay, you've saved a minute. Each Your Honor, thank you very much and good morning. May it please the court, Dan Masken on behalf of the United States. The defendants here have identified no factors distinguishing this case from the long line of stash house challenges that this court has rejected time and time again. Your Honor should affirm the defendant's convictions and in so doing reaffirm this court's longstanding precedence. I'll proceed, unless Your Honor prefer otherwise, I'll proceed directly to the 924C issue. There's no question that in this court's decision in Brown that Hobbs Act conspiracy no longer qualifies as a 924C predicate. The question then becomes under the Supreme Court decision in Hedgepeth, whether a properly instructed jury necessarily would have found that the drug trafficking conspiracy here did qualify as a 924C predicate. And given the factually coextensive nature of the two conspiracies here, the answer to that question is undoubtedly yes. And in support, I would direct Your Honor's ironically to the defendant's own brief and specifically to the multiplicity argument that Mr. Holton makes in his brief. Now we explained in our brief that that argument fails as a matter of law under Blockberger, but it's hard to argue with the factual predicates of that argument, which is to say the two conspiracies in this case were inextricably intertwined. They involved the same cast of characters, the same timeframes, the same overt acts. The list goes on and on. And so here there's no question that a properly instructed jury necessarily would have found that the drug trafficking conspiracy also qualified as a 924C predicate. I'm happy to entertain any other questions on that issue. If there are none, I'll move on to the entrapment question. Here the defendants can point to no mild coercion or any effort on the government's part to push a plan on unwilling participants. And especially relevant here is the testimony of the UC who told the jury that consistent with his practice in all of his investigations, he made a conscious effort to give the defendants multiple ways out in this case. He said, is this something you're sure you want to do? He said that at least three or four times in the first three fall 2015 meetings. And the defendants either laughed him off quite literally or said, no, no, this is what we do. This is what we do. So there's no evidence at all that the government coerced or tried to push a plan onto unwilling participants in this case. Essentially what the defendants argue is that every Stash House conspiracy case constitutes grounds for an entrapment defense. And as we know from the authorities that we cited in our brief, that simply isn't the case under 11th circuit law. I think your honors understand our argument with respect to discovery. The defendants pointed to no similarly situated suspects outside their protected class. And under that standard, their claim necessarily fails. Our position is that the defendants never squarely raised selective enforcement as an alternative theory in the district court. I believe the introduction both to the initial discovery motion and the amended discovery motion specifically referred to, or I guess I should say specifically accused the U.S. attorney's office for the Southern District of Florida of selectively prosecuting these defendants. And so did their motion not also seek the discovery about the actions of the Bureau? It did seek that discovery as well, but from our perspective, the defendants never argued that a different standard should apply to selective enforcement versus selective prosecution. And so, you know, to the extent that the selective enforcement claim would be for plain error and any error in applying the selective prosecution standard can't be plain under this course of law or the Supreme Court law. I'm happy to address any other questions that your honors have. Judge Marcus, I have a question about this idea of sentencing entrapment. I know that our law has not recognized it, but there's something about it, at least theoretically, that's troubling to me, and I'd like to raise it with you and seek your counsel on it. With the government basically creates the opportunity to orchestrate a drug conspiracy. The government would be free to basically set almost any amount of drugs that it chose to do. So let's suppose, can't you really manipulate what the sentence will be by saying, okay, we're going to rob a stash house, and we know that the stash house has 500 kilograms of the highest purity of cocaine hydrochloride. And suddenly when it comes to sentencing, the defendants are tagged with robbing a stash house with the idea of possessing with intent to distribute 500 keys of cocaine. You can really manipulate the sentence in that way by simply throwing out any amount that has any reason practicality, given the nature of the undertaking. Is the government free to just basically tag the defendant with any amount of the controlled substance that it chooses to use in the course of orchestrating the scenario? Thank you, your honor. It's worth pointing out that in this case, the amount that was proposed the defendants was between 10 and 20 kilograms. So we're not talking about the hundreds. And the other problem, assuming that the defense even exists and applying it in this case, is that it presupposes the existence of entrapment or at least the potential for entrapment instruction, which as we've established, simply doesn't apply here. And so, although perhaps there could be a case that might shock the conscience in that respect, it certainly wouldn't be this case. In this case, it wouldn't be one. Is it your view, Mr. Matzkin, that if they flunked out on entrapment, then they necessarily flunk out on any theory of sentencing entrapment? Yes. And my recollection is that we cited authority from this court to that effect in our brief as well. Thank you. If there are no further questions, we respectfully request that your honor affirm the district court in all respects. Thank you, Mr. Matzkin. Thank you. Actually, before he leaves, can he clarify my gun question? Just tell me about the Yes, your honor. So, to the best of my recollection, Mr. Cannon brought a rifle to the scene and Mr. Holton brought a pistol. And it was there on guns? They certainly weren't the government's guns. And do we know anything about the guns? Were they still on guns or were they, we don't know anything about the guns? As far as I recall, that's all we know about the guns. I don't think we know anything about the guns. I think he called them. Yes, I believe that's right. They were both semi-automatic, were they not? They were. They were fully automatic weapons? And were they loaded? I don't recall off the top of my head. I'm happy to. No, I can check the record just if you need. Okay. Thank you, Mr. Matzkin. Thank you, Mr. Matzkin. Mr. Sams, do you have a minute? Yes, your honor. Judge Hull, just to let you know, there was a third person that was arrested at the time of arrest. And I'm not sure which one of the three owned what guns. And so I'll just leave it at that. In regards to what Mr. Matzkin said- Mr. Sams, this is Judge Marcus. Would it be fair and accurate to say that the defendants, Cannon and Holton, brought the firearms to the scene? They were in their car. They provided the weapons? Yes, the group provided who owned what gun, I don't know. But yes, and I just wanted to point out, there was a third individual who played guilty. And I don't know- Was it just the two semi-automatic rifle and pistol? There were just two weapons and three people. Thank you. Okay. In regards to the discovery issue, I wanted to point out one of the government's cases, United States v. Hare, that he cited, where in that case, the defendants were known robbers that were doing home invasions, and they were approached with the same stash house staying situation. And those defendants asked, similar to what I asked for, manuals for ATF, et cetera, in regards to determining what were their policies, what were their directives? How did they come to these decisions? That court ordered in-camera hearings, reviewed the ATF manuals, and released to the defense one of the pages that gave the policies and directives of the ATF, and said that the only way the defense can gather this information was through this process. In other words, there is no way to test the ATF stash house staying policies unless discovery is given. It's an impossibility. So even the government's case showed the way that this should have been done. And I also want to point out, I never got a hearing on my discovery motion. It was just summarily denied, no hearing on either whether it was a selective prosecution, selective enforcement, whether I can get any evidence whatsoever to buttress what I had already found, that something is gravely wrong with what's going on with these ATF stash house things. Thank you. Thank you, Mr. Samms. Mr. Rosenbaum. Your Honor, may it please the court, with regards to Judge Marcus's question concerning sentencing entrapment, I differ with the government. I don't believe that the sentencing entrapment issue is tied into the original entrapment. Therefore, even if entrapment is not proven, I believe that that can be a sentencing argument separate and apart. Well, isn't the problem though that our case law has expressly refused to recognize sentencing entrapment as a viable defense? We've refused to directly address it, although we've cited to a lot of different circuits' opinions. I guess what I'm asking is, am I not bound by 11th Circuit case law that forecloses raising what we're calling sentencing entrapment? You are at this juncture in light of the standing case law. Yes, sir. And the only other question that I had in that regard is the amount that the government threw out was not several hundred kilograms as I had posited in the hypothetical, but only 10 to 20 pounds, or was it 10 to 20 kilos? 10 to 20 kilos, Your Honor. Thank you. Judge, if I could just give one finishing statement. The government, by the use of this case, didn't take any drugs off the street. On this case, or hundreds of other fake stash houses around the country. That's the problem with creating crime. The government is not making the country safer or reducing the actual flow of drugs. But for the government's action, fake stash houses would still be fake, non-existent drugs would still be non-existent, and the fictional armed guards would still be fictional. The government created this case, and it should be overturned. Thank you. Thank you, Mr. Rosenbaum. We have your case. I note that both you and Mr. Sams were court appointed. Thank you for accepting that appointment and for ably discharging your responsibility this morning and assisting us. Thank you, Your Honors. It was a pleasure.